UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT D. PENA,

                    Petitioner,

          v.

JEFFREY A. UTTECHT,

                    Respondent.

Case No. C17-1918-RSM-MAT

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Petitioner, a state prisoner who is currently confined at Airway Heights Corrections Center in Airway Heights, Washington, seeks relief under 28 U.S.C. § 2254 from a 2013 King County judgment and sentence.  Respondent has filed an answer to petitioner's habeas petition and submitted relevant portions of the state court record.  Petitioner did not file a response to respondent's answer.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends denying petitioner's habeas petition, dismissing this action with prejudice, and denying a certificate of appealability.

REPORT AND RECOMMENDATION - 1

1

II.    FACTUAL AND PROCEDURAL HISTORY

2    The Washington Court of Appeals ("Court of Appeals") described the testimony that was

3    presented at trial as follows:

4    In October 2011, L.L. was eight years old and lived in an apartment next door to
     her aunt Ashley.  On the evening of October 8, Peña was at Ashley's house with
5    his fiancé and their daughter.  L.L. came over with her mother to play with her
     cousin.  L.L.'s mother left briefly to put L.L.'s younger brother to bed, but L.L.
6    stayed behind.

7    While Ashley and Peña's fiancé chatted in another room, Peña sat down next to L.L
     and began rubbing her leg "all the way up."  He asked her to go to the store with
8    him but she declined.  When L.L. asked what time it was, Peña told her there was
     a clock in the bathroom.  Peña followed L.L. into the bathroom, held her against
9    the sink, put his hand under her underwear, and rubbed her where she "go[es] to
     the bathroom."  While he touched her, Peña kept saying "good girl."  After a minute
10   or so, Peña stopped and L.L. ran home.  L.L. rushed into her apartment and
     slammed the door, looking pale and breathing heavily.  She told her mother, "Mom,
11   I'm not going back over there . . . because I'm freaked out and I'm really grossed
     out . . . because of that man over there."  L.L.'s mother asked her what happened.
12   While crying and having difficulty breathing, L.L. described what Peña had done.

13   (Dkt. 27, Ex. 15 at 2.)  The state charged petitioner with one count of first degree child molestation.

14   (*Id.*)  His first trial resulted in a hung jury.  (*Id.*)  After a second trial, the jury convicted him as

15   charged.  (*Id.*)  The trial court imposed a sentence of 149-months to life.  (Dkt. 27, Ex. 1.)  The

16   Court of Appeals affirmed the judgment and sentence.  (Dkt. 27, Exs. 2, 8.)  The Washington

17   Supreme Court denied his petition for review.  (Dkt. 27, Exs. 9, 10.)  On June 1, 2015, the U.S.

18   Supreme Court denied his petition for a writ of certiorari.  *Pena v. Washington*, 135 S. Ct. 2387

19   (2015).

20   In December 2015, petitioner filed a personal restraint petition in the Court of Appeals.

21   (Dkt. 27, Ex. 12; *see also id.*, Exs. 13, 14.)  On November 15, 2016, the Court of Appeals denied

22   all the claims but one, which alleged that petitioner's trial counsel had provided ineffective

23   assistance in advising him whether to accept a plea offer.  (Dkt. 27, Ex. 15.)  The Court of Appeals

REPORT AND RECOMMENDATION - 2

1    remanded this claim for a reference hearing. (Dkt. 27, Exs. 16-21.) The Superior Court conducted

2    the hearing as ordered, and the judge issued findings of fact on May 10, 2017. (Dkt. 27, Ex. 22.)

3    After receiving the findings of fact, the Court of Appeals denied the remaining claim on June 2,

4    2017. (Dkt. 27, Ex. 23.)

5         In December 2016, prior to the reference hearing, petitioner filed a motion in the

6    Washington Supreme Court asking that any motion for discretionary review be due 60 days after

7    the conclusion of the reference hearing. (Dkt. 27, Ex. 24.) The Washington Supreme Court

8    granted the motion. (Dkt. 27, Ex. 25.) Petitioner subsequently requested and received additional

9    extensions of time to file a motion for discretionary review. (Dkt. 27, Exs. 26, 27.) The

10   Washington Supreme Court eventually set a firm deadline of November 21, 2017, for petitioner to

11   file a motion for discretionary review. (Dkt. 27, Ex. 27.) After multiple requests by petitioner,

12   the court extended the deadline to January 3, 2018. (*See* Dkt. 27, Exs. 28-35.) On December 26,

13   2017, petitioner sought an additional extension of time, but the court denied the request because

14   he did not provide a legitimate reason for any further extension of time. (Dkt. 27, Exs. 36, 37.)

15   The Washington Supreme Court ultimately dismissed the matter because petitioner did not file a

16   motion for discretionary review by January 3, 2018. (Dkt. 27, Ex. 37.)

17        Meanwhile, on July 17, 2017, petitioner filed a notice of appeal from the Superior Court's

18   findings of facts after the reference hearing. (Dkt. 27 at Ex. 39.) The Commissioner dismissed

19   the appeal on October 27, 2017. (*Id.*)

20              III.    GROUNDS FOR RELIEF

21        Petitioner's grounds for habeas relief[1] may be stated as follows:

22

23        _____

          [1] Petitioner also submitted a memorandum in support of his habeas petition, which changes the numbering
     of the claims. (Dkt. 7.) The Court addresses the claims as identified in the petition. *See* Rule 2, U.S.C. foll. § 2254
     (habeas petition must specifically identify each ground for relief).

     REPORT AND RECOMMENDATION - 3

GROUND 1: Public trial violation based on excusing prospective jurors "outside of public eye." (Dkt. 3 at 14.)

GROUND 2: Public trial violation based on a vanishing prospective juror. (*Id.* at 16.)

GROUND 3: Right to a fair trial by an impartial and unbiased jury was violated when (a) jurors were empaneled who openly admitted bias, (b) prospective jurors who requested private questioning were not questioned at all, (c) a juror with a severe hearing impairment was empaneled. (*Id.* at 17.)

GROUND 4: Ineffective assistance of trial counsel based on inadequate voir dire and violation of right to fair trial by impartial jurors.[2] (*Id.* at 18-19.)

GROUND 5: Ineffective assistance of trial counsel because counsel (a) failed to call alibi witnesses, (b) failed to relay prosecutor's plea offer to petitioner, (c) failed to perform adequate voir dire, (d) failed to object to the DVD of the child interview being allowed into jury deliberations, and (e) encouraged the court to allow the prosecutor to elicit false testimony from the alleged victim. (*Id.* at 20-21.)

GROUND 6: Trial counsel and prosecutorial misconduct based on joint scheme to present false testimony/tamper with the alleged victim's testimony. (*Id.* at 22.)

GROUND 7: Abuse of discretion when the trial court allowed the jury to re-watch the DVD of the child interview in the jury room. (*Id.* at 23-24.)

GROUND 8: Cumulative error. (*Id.* at 25-26.)

GROUND 9: Ineffective assistance of appellate counsel. (*Id.* at 27-28.)

---

[2] Ground 4 is duplicative of Grounds 3 and 5(c).

1

IV.     DISCUSSION

2    A.    Exhaustion

3        Before seeking federal habeas relief, a state prisoner must exhaust the remedies available

4    in the state courts.  The exhaustion requirement reflects a policy of federal-state comity, intended

5    to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its

6    prisoners' federal rights."  *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation and

7    citation marks omitted).

8        There are two avenues by which a petitioner may satisfy the exhaustion requirement.  First,

9    a petitioner may properly exhaust his state remedies by "fairly presenting" his claim in each

10   appropriate state court, including the state supreme court with powers of discretionary review,

11   thereby giving those courts the opportunity to act on his claim.  *Baldwin v. Reese*, 541 U.S. 27, 29

12   (2004); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).  "It has to be clear from the petition filed

13   at each level in the state court system that the petitioner is claiming the violation of the federal

14   constitution that the petitioner subsequently claims in the federal habeas petition."  *Galvan v.

15   Alaska Dep't of Corrections*, 397 F.3d 1198, 1204 (9th Cir. 2005).

16       Second, a petitioner may technically exhaust his state remedies by demonstrating that his

17   "claims are now procedurally barred under [state] law."  *Gray v. Netherland*, 518 U.S. 152, 162-

18   63 (1996) (quoting *Castille v. Peoples*, 489 U.S. 436, 351 (1989)); *see also Smith v. Baldwin*, 510

19   F.3d 1127, 1139 (9th Cir. 2007) (en banc).  If the petitioner is procedurally barred from presenting

20   his federal claims to the appropriate state court at the time of filing his federal habeas petition, the

21   claims are deemed to be procedurally defaulted for purposes of federal habeas review.  *O'Sullivan

22   v. Boerckel*, 526 U.S. 838, 848 (1999).  A habeas petitioner who has defaulted his federal claims

23   in state court meets the technical requirements for exhaustion because "there are no state remedies

REPORT AND RECOMMENDATION - 5

any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732 (2007). Federal habeas review of procedurally defaulted claims is barred unless the petitioner can either demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Id.* at 724.

Respondent concedes that petitioner properly exhausted Grounds 1-4, 5(a), 5(c), and 6-8 by fairly presenting them to the Washington Supreme Court on direct review. (Dkt. 25 at 7, 11; *see also* Dkt. 27, Ex. 9.) Respondent contends, however, that petitioner failed to properly exhaust Grounds 5(b), 5(d), 5(e), and 9 because he did not fairly present those claims to the Washington Supreme Court. (*Id.*) Respondent asserts that these claims are now technically exhausted and procedurally defaulted. As discussed below, the Court agrees with respondent.

1.    *Proper Exhaustion*

The only brief petitioner submitted to the Washington Supreme Court was his petition for review on direct appeal. (Dkt. 27, Ex. 9.) The Court has carefully reviewed his petition for review and agrees with respondent that petitioner did not raise Ground 5(b) (ineffective assistance for failure to relay plea deal), 5(d) (ineffective assistance for failure to object to DVD viewing), 5(e) (ineffective assistance for encouraging prosecutor to elicit false testimony), and 9 (ineffective assistance of appellate counsel). (*See id.*) Petitioner did not raise any issue related to a plea deal or ineffective assistance of appellate counsel. (*See id.*) Petitioner argued that he "was denied due process by trial counsel and the prosecutor's knowing use of false evidence or perjured testimony," but he did not claim that his counsel was ineffective in this regard. (*See id.* at 17-18.) He also asserted that a new trial was warranted because the trial court allowed the jury unfettered access to the DVD of the child witness, but again he did not claim that counsel was ineffective for not objecting to the DVD access. (*See id.* at 18-19.) Because petitioner did not claim the violation of

1    the federal constitution that he claims here, he failed to properly exhaust these claims.  *See Galvan*,

2    397 F.3d at 1204.

3        2.    *Technical Exhaustion*

4        As discussed above, petitioner did not properly exhaust Grounds 5(b), 5(d), 5(e), and 9.

5    As respondent maintains, these claims are technically exhausted because if petitioner attempted to

6    raise them in a second personal restraint petition, the state courts would find them barred by

7    Washington law.  Under RCW 10.73.090(1), a petition for collateral attack on a judgment and

8    sentence in a criminal case must be filed within one year after the judgment becomes final, subject

9    to exceptions that do not apply here.  *See* RCW 10.73.100.  A judgment becomes final for purposes

10   of state collateral review on the date that the appellate court issues its mandate disposing of a

11   timely direct appeal.  RCW 10.73.090(3)(b).  Here, the state court issued its mandate well over

12   one year ago.  (*See* Dkt. 27, Ex. 11.)  It therefore appears clear that petitioner would now be time

13   barred from returning to the state courts to present his unexhausted claims.  *See* RCW 10.73.090.

14   Moreover, because petitioner has previously presented a personal restraint petition to the state

15   courts, the state courts are unlikely to entertain another such petition.  *See* RCW 10.73.140

16   (successive petition bar).  Accordingly, the Court concludes that petitioner has technically

17   exhausted, and procedurally defaulted, Grounds 5(b), 5(d), 5(e), and 9.

18       3.    *Cause and Prejudice*

19       Federal habeas review of petitioner's procedurally defaulted claims is barred unless he can

20   demonstrate cause and prejudice, or a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at

21   750.  To satisfy the "cause" prong of the cause and prejudice standard, petitioner must show that

22   some objective factor external to the defense prevented him from complying with the state's

23   procedural rule.  *Id.* at 753; *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (a petitioner can

1    demonstrate "cause" if he shows constitutionally ineffective assistance of counsel, the

2    unavailability of a factual or legal basis for a claim, or some interference by officials).  To show

3    "prejudice," petitioner "must shoulder the burden of showing, not merely that the errors at his trial

4    created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage,

5    infecting his entire trial with error of constitutional dimensions."  *United States v. Frady*, 456 U.S.

6    152, 170 (1982) (emphases in original).  And only in a "truly extraordinary case," the Court may

7    grant habeas relief without a showing of cause or prejudice to correct a "fundamental miscarriage

8    of justice" where a constitutional violation has resulted in the conviction of a defendant who is

9    actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 338 (1995).

10    Petitioner fails to demonstrate that any factor external to the defense prevented him from

11    complying with the state's procedural rules and, thus, he has not demonstrated cause for his

12    procedural default.  Because petitioner has not met his burden of demonstrating cause for his

13    procedural default, the Court need not determine whether there was any actual prejudice.  *See*

14    *Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448 (9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S.

15    527, 533 (1986)).  In addition, petitioner makes no colorable showing of actual innocence.

16    Petitioner thus fails to demonstrate that his procedurally defaulted claims are eligible for federal

17    habeas review.  Therefore, Grounds 5(b), 5(d), 5(e), and 9 should be DENIED.

18    B.    Merits review

19    Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus

20    petition may be granted with respect to any claim adjudicated on the merits in state court only if

21    (1) the state court's decision was contrary to, or involved an unreasonable application of, clearly

22    established federal law, as determined by the Supreme Court, or (2) the decision was based on an

23    unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

REPORT AND RECOMMENDATION - 8

In considering claims pursuant to § 2254(d), the Court is limited to the record before the state court that adjudicated the claim on the merits, and the petitioner carries the burden of proof. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011); *see also Gulbrandson v. Ryan*, 738 F.3d 976, 993 (9th Cir. 2013). "When more than one state court has adjudicated a claim, [the Court analyzes] the last reasoned decision." *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

Under § 2254(d)(1)'s "contrary to" clause, a federal court may grant the habeas petition only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09. The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. This includes the Supreme Court's holdings, not its dicta. *Id*. "If no Supreme Court precedent creates clearly established federal law relating to the legal

1    issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or

2    an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955

3    (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

4        With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state

5    court's conclusion was based on "an unreasonable determination of the facts in light of the

6    evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)

7    (quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A]

8    decision adjudicated on the merits in a state court and based on a factual determination will not be

9    overturned on factual grounds unless objectively unreasonable in light of the evidence presented

10   in the state-court proceedings."). The Court presumes the state court's factual findings to be sound

11   unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence."

12   *Miller-El*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).

13       With these standards in mind, the Court turns to petitioner's remaining claims.

14       1.    *Grounds 1 and 2—Right to Public Trial*

15       Petitioner argues that his Sixth Amendment right to a public trial was violated because

16   prospective jurors were excused outside of the public eye (Ground 1) and one juror was dismissed

17   off the record (Ground 2). (Dkt. 3 at 14, 16; Dkt. 7 at 12-18.) He claims four specific instances

18   during voir dire when his right to a public trial was violated. First, the trial court "took a session

19   break" and then questioned six jurors on the record in open court. (Dkt. 7 at 12.) Second, after a

20   lunch break and before officially reconvening, the trial court realized she did not swear in two

21   privately questioned jurors and dismissed them by contacting the jury room to tell them they were

22   excused. (*Id.* at 12-13.) This occurred in open court and on the record. (*Id.*) Third, after excusing

23   the jury venire for a break, the trial court informed the parties that prospective juror 35 was missing

and dismissed him. (*Id.* at 13.) Again, this occurred in open court and on the record. (*Id.*) Finally, petitioner claims that there is no record of prospective juror 2 being dismissed, and therefore she must have been dismissed off the record in violation of his right to a public trial and right to be present. (*Id.* at 13-18.)

Respondent argues that petitioner waived these grounds for relief by failing to object at trial. (Dkt. 25 at 16-19.) Under federal law, a defendant can waive the public trial right guarantee by failing to object to closure of the voir dire proceeding. *Peretz v. United States*, 501 U.S. 923, 936-37 (1991) (citing *Levine v. United States*, 362 U.S. 610, 619 (1960)); *see also Momah v. Uttecht*, No. 15-0536, 2016 WL 1059404 (W.D. Wash. Mar. 17, 2016), *certificate of appealability granted*, 2016 WL 3254994 (W.D. Wash. June 14, 2016) (granting certificate of appealability on issue of whether petitioner waived his public trial right by failing to object at trial, although issue was raised on direct and reviewed by the Washington state appellate courts), *affirmed*, 669 Fed. Appx. 604 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 524 (2017). Petitioner did not object to the manner in which prospective jurors were dismissed. The Court has little difficulty concluding that he waived his public trial right claim as to the first three instances about which he complains because these events occurred in open court, on the record, and when he and his counsel were present. It is less clear, however, whether he could have waived his fourth claim because he alleges the juror was excused outside of his presence.

Nevertheless, regardless of whether petitioner waived these claims, he fails to show that the Court of Appeals' decision was unreasonable. The Court of Appeals rejected his public trial claims because he failed to show a closure of the courtroom:

> Peña filed a pro se statement of additional grounds alleging, among other things, violations of his right to a public trial. His claim is based in part on the fact that some jurors were questioned about sensitive matters outside the presence of the other jurors. However, contrary to Peña's assertions, the record does not indicate

1

2

3   that the courtroom was ever closed.  While the other jurors were not present in the
courtroom at the time, there is no indication in the record that the court ordered that
the public be excluded from the courtroom.  A violation of the right to a public trial
may occur where the questioning is done in chambers or outside the courtroom or
when the courtroom was closed.  *See, e.g., State v. Strode*, 167 Wash. 2d 222, 217
P.3d 310 (2009); *State v. Bone-Club*, 128 Wash. 2d 254, 906 P.2d 325 (1995).
Because the courtroom was never actually closed, we do not find a violation of his
right to a public trial.

4

5

6   Peña expresses concern about the fact that juror 35 was excused after failing to
return from a court break.  The parties and the court agreed to excuse the juror, and
they did so in open court.  We are unaware of authority that would require review
in this situation.  The same is true with respect to the fact that two potential jurors
were dismissed in open court with no objection after the court realized it had
neglected to swear them in.

7

8

9   Peña suggests that there is no record showing that the person originally seated as
juror two was excused.  But there is a clear record showing how each party
exercised their challenges and which jurors constituted the final panel.  In short, we
see no basis in these circumstances for a claim that the right to a public trial was
compromised.

10

11

12  (Dkt. 27, Ex. 2 at 6-7.)

13       Having carefully reviewed the voir dire transcripts (Dkt. 49-1 at 146-410), the Court

14  concludes that the Court of Appeals' decision was not based on an unreasonable determination of

15  the facts.  It is clear that the courtroom was never closed, and all proceedings occurred in open

16  court with the parties and a court reporter present.  While there are some inconsistencies in the

17  transcript of the peremptory challenges (*see* Dkt. 49-1 at 406-10), none establish that the Court of

18  Appeals unreasonably denied petitioner's public trial right claim.  Petitioner is correct that the

19  transcript does not indicate that prospective juror 2 was dismissed.  However, the transcript shows

20  that the State excused prospective juror 32 twice (*id.* at 408), and it would have been reasonable

21  for the Court of Appeals to conclude that the first reference to prospective juror 32 was an error in

22  the transcript and that the State actually excused prospective juror 2, who had stated during voir

23  dire that she would be concerned a child witness might fabricate a story regarding abuse if he or

1    she was lacking attention (*see* Dkt. 49-1 at 402).  The trial court replaced this juror with prospective

2    juror 51, who was excused and replaced by prospective juror 53, who was empaneled as juror 2.

3    (*See id.* at 408.)  This is a more reasonable reading of the record than assuming that prospective

4    juror 2 was dismissed off the record.  Given that it was not objectively unreasonable for the Court

5    of Appeals to conclude that the record did not support petitioner's courtroom closure and vanishing

6    juror claims, the Court finds that petitioner is not entitled to habeas relief on Grounds 1 and 2.

7         2.    *Grounds 3 and 4—Denial of Right to Impartial Jury*

8         Petitioner argues that his right to an impartial and unbiased jury was violated when (a)

9    jurors were empaneled who openly admitted bias, (b) prospective jurors who requested private

10    questioning were not questioned at all, and (c) a juror with a severe hearing impairment was

11    empaneled.  (Dkt. 3 at 17; Dkt. 7 at 19-32.)  He also complains that prospective jurors who were

12    not questioned during voir dire were seated on the jury.  (Dkt. 7 at 28-30.)

13         Trial by an impartial jury is fundamental to the fair administration of criminal justice.

14    *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  An

15    impartial jury is one that is composed of "jurors who will conscientiously apply the law and find

16    the facts."  *Lockhart v. McCree*, 470 U.S. 162, 178 (1986) (quoting *Wainwright v. Witt*, 469 U.S.

17    412, 423 (1985)).  A juror is considered impartial under the Sixth Amendment standard if the juror

18    can set aside any opinion he or she might hold and decide the case solely on the evidence presented

19    at trial.  *Patton v. Yount*, 467 U.S. 1025, 1036 (1984); *see also Smith v. Phillips*, 455 U.S. 209, 217

20    (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence

21    before it.").  The burden rests on the defendant to prove a juror was biased resulting in the denial

22    of the right to trial by an impartial jury.  *See Wainwright*, 469 U.S. at 423 ("[I]t is the adversary

23    seeking exclusion [of a juror] who must demonstrate, through questioning, that the potential juror

1    lacks impartiality.").  A state court's findings on juror impartiality are entitled to deference on

2    federal habeas corpus review because juror impartiality is a question of fact.  *Uttecht v. Brown*,

3    551 U.S. 1, 9-10 (2007); *Wainwright*, 469 U.S. at 429-30; *Patton*, 467 U.S. at 1036-40 & n.12, 14;

4    *Mu'Min v. Virginia*, 500 U.S. 428, 429 (1991); *Noltie v. Peterson*, 9 F.3d 802, 807 (9th Cir. 1993).

5         The Court of Appeals rejected petitioner's claim in Ground 3(a) regarding biased jurors:

6         Peña next asserts that prospective jurors 15 and 41 demonstrated actual bias and
          should have been excused.  On the first day of voir dire, prospective juror 15 was

7         one of a group of prospective jurors who stated they could not be fair and impartial
          due to the nature of the charges.  The following day, when asked again, prospective

8         juror 15 said she had young children "but thinking about it last night, I thought I
          shouldn't let my personal life affect this case so I'm fine with it."  The trial court

9         said "Okay.  So you're—" and prospective juror 15 responded "Yeah, I can have
          an open mind and I can give this trial a chance."  Prospective Juror 41 stated in his

10        questionnaire that he might be unable to be impartial because "my career [as a
          firefighter] has exposed me to many things & I don't like to see children hurt or

11        abused."  During follow-up questioning, prospective juror 41 made it clear that he
          was able to presume the defendant innocent, hold the State to its burden of proof,

12        keep an open mind, and "balance it all and make a fair assessment or judgment."
          Peña fails to establish that it was error to seat prospective jurors 15 and 41 or that

13        he was prejudiced thereby.

14   (Dkt. 27, Ex. 15 at 5-6 (alteration in original).)  Given that the state courts found that prospective

15   jurors 15 and 41 were impartial, petitioner is entitled to habeas relief only if he can show that this

16   finding is unreasonable based on the record.

17        Petitioner argues that prospective juror 15's initial statement that she could not be fair and

18   impartial should have disqualified her immediately and that the trial court abused its discretion

19   when it did not excuse her for cause.[3]  (Dkt. 7 at 21.)  With respect to prospective juror 41,

20   petitioner argues that the juror's statement that he "thinks" he could be impartial was insufficient

21   to overcome his statement that he would favor the victim.  (*Id.* at 21-23.)  Having reviewed the

22

23        [3] Petitioner also argues that prospective juror 15 failed to follow the judge's instructions and spoke with her
     family about the case after the first day of voir dire.  (Dkt. 7 at 23.)  But a review of the record establishes that
     prospective juror 15 never suggested that she spoke with her family, only that she thought about the case.  (Dkt. 49-1
     at 328-29.)

record as a whole, the Court concludes that the state courts' determination that prospective jurors 15 and 41 were unbiased is not objectively unreasonable as both jurors indicated they could set aside their personal opinions and decide the case fairly.  (*See* Dkt. 49-1 at 205-13 (discussion with prospective juror 41), 328-29 (discussion with prospective juror 15).)  Petitioner's arguments to the contrary are insufficient to overcome the high bar required to obtain habeas relief.

The Court of Appeals rejected petitioner's arguments in Ground 3(b) because he failed to show that the prospective jurors at issue requested private questioning:

Peña first asserts that prospective jurors 8 and 58 requested individual questioning in their juror questionnaires but never received it.  He appears to suggest that such a request shows the prospective jurors were biased.  But prospective juror 8 did not, in fact, request individual questioning.  As to prospective juror 58, the following exchange occurred:

DEFENSE COUNSEL: And, can we go back?  Number Fifty-eight, for whatever reason, didn't answer "yes" to anything, but did say wanted [sic] to be questioned outside the presence of the other jurors.[4]

COURT:  So it [sic] must be misreading that.  I will again tell them, any of the jurors, when they come in, if they want to talk privately we'll give them the opportunity.

Peña fails to establish that either prospective juror 8 or 58 desired individual questioning.  And Peña's argument that this court must assume that they wanted individual questioning because of "some sort of conduct or part of their life that was essential to the case" is too speculative to warrant relief.

(Dkt. 27, Ex. 15 at 4-5 (alterations added).)  The Court of Appeals correctly determined that prospective juror 8 did not request private questioning on the questionnaire. (Dkt. 7-1 at 13.)  The Court of Appeals also reasonably determined that prospective juror 58 did not desire individual questioning; the trial court discussed the inconsistency in prospective juror 58's questionnaire with

---

4 [Court of Appeals footnote 1]  The juror questionnaire asked prospective jurors several "yes" or "no" questions regarding sensitive topics such as sexual abuse.  Jurors who answered "yes" to any of the questions were then asked if they would like to be asked follow-up questions on these topics outside the presence of the other jurors.

1   counsel, reasonably concluded that the prospective juror had misread the question, and then gave

2   all prospective jurors another opportunity to request private questioning.  (*See id.* at 24; Dkt. 49-1

3   at 162, 264.)  Petitioner fails to establish that the Court of Appeals' decision was based on an

4   unreasonable determination of the facts and therefore this claim should be rejected.

5        The Court of Appeals considered and rejected petitioner's claim in Ground 3(c) that

6   empaneled juror 2 was unable to hear the trial testimony:

> During trial, a juror requested a listening device and appeared to have difficulty
> hearing questions from the trial court when the jury returned its guilty verdict. The
> defendant contends the trial court erred by refusing to give him access to juror
> contact information and more time to investigate.   Because the defendant's
> suspicion that the juror's hearing impairment prevented her from being a competent
> juror was based solely on speculation, the trial court did not abuse its discretion.
>
> *****
>
> At the second trial, during voir dire, a member of the venire panel asked the bailiff
> for a listening device and was given one.  This person was ultimately seated as juror
> two.  After deliberations, the jury returned a guilty verdict.  The trial court then
> polled the jury to ensure the verdict was unanimous.  Upon the court's questioning
> of juror two, the following colloquy occurred:
>
>     THE COURT: Juror 2, this was your individual verdict?
>
>     JUROR NO. 2: I can't—
>
>     THE COURT: Is this how you voted?
>
>     JUROR NO. 2: (Nodded affirmatively.) I can't hear you.
>
>     THE COURT: You can't hear me?
>
>     JUROR NO. 2: What is she saying?
>
>     THE COURT: Juror 2, can you hear me at all without the—can you hear me
> now?
>
>     JUROR NO. 2: Okay.
>
>     THE COURT: Can you hear me now?

REPORT AND RECOMMENDATION - 16

1  JUROR NO. 2: Yeah.

2  THE COURT: Okay.  Was this your individual verdict, is this how you voted?

3  JUROR NO. 2: Yes.

4  THE COURT: Was it the verdict of the entire jury panel?

5  (Off the record.)

6  THE COURT: Was it how the entire jury panel voted?

7  JUROR NO. 2: I can't hear.

8  THE COURT: Did the entire jury panel vote to convict?

9  JUROR NO. 2: Yes.

10  THE COURT: Okay.

Based on this exchange, Peña moved for a new trial and requested that sentencing be delayed so he would have the opportunity to investigate the extent of the juror's hearing impairment during trial.  The court continued the matter for more than two months.  During this time, Peña's investigator contacted only one juror, who did not respond to requests to discuss the case.  Peña requested an additional continuance.  He also asked the trial court to disclose juror contact information or recall the jury for questioning.  The court denied both requests.  The court reasoned that the record showed only that the juror had trouble hearing at one specific moment and had asked for help when she needed it:

> The only thing that we knew or know now, is that the juror was having difficulty with the listening device when I was polling her.  She did, obviously, have the ability to ask for help when she needed it, because that's why she had a listening device in the first place.

Peña appeals.  He assigns error to the trial court's denial of his motion to delay sentencing and the refusal to disclose juror contact information.  He contends he should have been allowed to conduct further investigation because if the juror was unable to hear the trial, his right to a unanimous jury was violated.

We review the denial of a motion for continuance for an abuse of discretion. [citation omitted]  The trial court's decision will not be disturbed on appeal absent a showing that the court abused its discretion and the defendant was prejudiced by that decision.  [citation omitted]  Discretion is abused if it is exercised on untenable grounds or for untenable reasons.  [citation omitted]

Peña cites *State v. Turner*, 186 Wis. 2d 277, 521 N.W.2d 148 (1994). There, the Wisconsin Supreme Court examined a case where at least two jurors, and potentially as many as six, could not hear material testimony at trial. *Turner*, 186 Wis. 2d at 281, 521 N.W.2d 148. In that case, the record disclosed 23 points where either the court or attorneys noted that the jury was having trouble hearing. *Turner*, 186 Wis. 2d at 280, 521 N.W.2d 148. The trial court had also received information from its bailiff that two of the jurors used hearing aids and were functionally deaf. *Turner*, 186 Wis. 2d at 281, 521 N.W.2d 148. Once the trial court questioned the jurors, it became clear that one of the jurors, and perhaps two, had not heard much if any of the testimony. *Turner*, Wis. 2d at 282. The court concluded that the defendant's state and federal constitutional right to an impartial jury and due process were violated. *Turner*, Wis.2d at 285.

Peña also relies on *State v. Hayes*, 270 Kan. 535, 17 P.3d 317 (2001). In *Hayes*, a juror who was hard of hearing requested the transcript of the defendant's testimony. *Hayes*, 270 Kan. at 537, 17 P.3d 317. The trial court questioned the juror, and he indicated that he was unable to hear any of the testimony. *Hayes*, 270 Kan. at 540, 17 P.3d 317. Despite this, the court refused to read back any of the transcribed testimony to the juror. *Hayes*, 270 Kan. at 540, 17 P.3d 317. The Kansas Supreme Court concluded that the trial court had an obligation to read back the transcript of the testimony or to respond in some meaningful way to the juror's request. *Hayes*, 270 Kan. at 540, 17 P.3d 317. Under these circumstances, the trial court abused its discretion when it refused to declare a mistrial. *Hayes*, 270 Kan. at 540, 17 P.3d 317.

Here, there are only two instances in the record where the juror's hearing was mentioned: during voir dire and during the polling of the jury. The juror was proactive enough to request a listening device at the beginning of the trial. She demonstrated a willingness to contact the bailiff when she had trouble hearing, and she similarly spoke up when she could not hear the trial judge polling the jury. Turner and Hayes both involved significantly more concrete evidence that jurors could not hear crucial testimony and so they do not persuade us that an error occurred in this case.

Peña contends that the trial court should have assisted with his investigation by disclosing jury contact information. However, individual juror information is presumptively private under GR 31(j) . . . .

Under this rule, even upon a showing of good cause, whether or not to disclose a juror's personal information is discretionary with the trial court. Because the trial court had already granted Peña a continuance to investigate the matter, and no additional information had been found, it was speculation as to whether or not the juror had actually had any trouble at all. As a result, we cannot conclude that the trial court abused its discretion by refusing to disclose juror information and grant a continuance.

REPORT AND RECOMMENDATION - 18

1   (Dkt. 27, Ex. 2 at 1-5 (alterations added).)

2       Petitioner asserts that juror 2 (prospective juror 53) needed a listening device but did not

3   request one until the second day of voir dire.  (Dkt. 7 at 26.)  He argues that her disability may

4   have been so extreme that it would have prevented her from serving as a juror if the issue were

5   discussed during voir dire.  (*Id.* at 26-27.)  He contends that it is "reasonable to assume she could

6   not hear anything that was being said during voir dire."  (*Id.* at 28.)  He also maintains that the

7   transcripts establish that she was "unable to clearly deliberate or meaningfully participate in jury

8   service."  (*Id.* at 29; *see also id.* at 30.)

9       But the Court of Appeals reasonably found that petitioner's concerns regarding juror 2

10  were based on speculation.  Juror 2 was only in the courtroom for the last 30 minutes of the first

11  day of voir dire, and she asked for and obtained a hearing device before the start of the second day.

12  (*See* Dkt. 49-1 at 254, 247, 318.)  On the second day of trial, the trial court began the morning by

13  noting that members of the jury had informed the bailiff they were having difficulty hearing her

14  when she was away from the microphone, stated that she would endeavor to speak into the

15  microphone, and appreciated the jurors for letting her know that they were having trouble hearing.

16  (Dkt. 49-2 at 60.)  Notably, the jurors did not indicate they had difficulty hearing any trial

17  testimony.  And, as the Court of Appeals discussed at length, juror 2 informed the trial court when

18  she could not understand the court's questions of her after the verdict was read.  (*Id.* at 330-31.)

19  Juror 2 and each of the other jurors confirmed that the verdict was their own and that of the entire

20  jury panel.  (*Id.* at 329-33.)  Given this record, the Court of Appeals was not objectively

21  unreasonable in concluding that juror 2 was a qualified and impartial juror.  Petitioner's arguments

22  regarding her ability to hear during the trial, participate in deliberations, and render a fair verdict

23  are based on speculation.  This claim should be dismissed.

The Court of Appeals also rejected petitioner's claim that prospective jurors who were not questioned during voir dire were empaneled:

> Finally, Peña asserts that prospective jurors 53 and 58 committed misconduct because they "went through voir dire without raising their hands or participating on any given subject." But Peña provides no relevant authority in support of this proposition. The cases Peña cites involve jurors who lied or omitted relevant facts when questioned. Peña provides no evidence in support of his claim that this happened here.

(Dkt. 27, Ex. 15 at 6.) Petitioner again fails to provide any evidence suggesting prospective jurors 53 or 58 were unqualified to sit as jurors. He likewise fails to cite any authority establishing that the Court of Appeals' determination was contrary to or an unreasonable application of clearly established federal law. (*See* Dkt. 7 at 23-32.)

In sum, petitioner's biased jury claims should be dismissed.

3.    *Grounds 4 and 5—Ineffective Assistance of Trial Counsel*

Petitioner argues that his trial counsel was ineffective because she failed to call alibi witnesses (Ground 5(a)) and failed to perform adequate voir dire (Grounds 4 and 5(c)). After setting forth the correct legal standards, the Court of Appeals rejected these claims:

> Peña contends that trial counsel was ineffective for failing to establish an alibi defense. He claims that a number of witnesses, including his fiancé, would have testified that he had attended a funeral and was then home all night on October 8. But Peña does not identify any of these alleged alibi witnesses other than his fiancé, and provides no support for this claim in the form of declarations from any of these individuals. Moreover, when Peña's fiancé testified, she could not remember the exact date when she and Peña visited Ashley's apartment. Finally, it is clear that the decision to pursue or not pursue an alibi defense is a matter of trial strategy which cannot give rise to a claim of ineffective assistance of counsel.[5]

---

[5] [Court of Appeals footnote 2] Peña's attorney alluded to strategic reasons not to pursue an alibi defense at sentencing:

> DEFENSE COUNSEL:  And, Your Honor, if I could just clarify.  I mean, there may be some suggestions that did affect the assessments of counsel, and it may have to do with trial strategy and

1

2
   Peña argues that trial counsel was ineffective for failing to adequately conduct voir dire and assess whether prospective jurors were biased.  He bases this claim on the

3
fact that prospective jurors 53 and 58 were seated on the jury despite the fact that neither of them responded to group questioning nor requested individual

4
questioning.  But in a claim of ineffective assistance of counsel, it is Peña's burden to show prejudice.  Nothing in the juror questionnaires of prospective jurors 53 and

5
58 indicates that they were biased or unable to be fair or impartial.  Peña's speculation to the contrary is not sufficient to warrant consideration.

6
(Dkt. 27, Ex. 15 at 11-12.)

7
   The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

8
counsel.  *Strickland v. Washington*, 466 U.S. 668 (1984).  Claims of ineffective assistance of

9
counsel are evaluated under the two-prong test set forth in *Strickland*.  Under *Strickland*, a

10
defendant must prove that (1) counsel's performance was deficient and, (2) the deficient

11
performance prejudiced the defense.  *Id.* at 687.

12
   With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's

13
performance fell below an objective standard of reasonableness.  *Id.* at 688.  Judicial scrutiny of

14
counsel's performance must be highly deferential.  *Id.* at 689.  "A fair assessment of attorney

15
performance requires that every effort be made to eliminate the distorting effects of hindsight, to

16
reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

17

18
_____

19
 things of that nature, which I think that certainly as far as trial strategy goes, I think that the Appellate Courts are going to say that that's really up to the attorney.

20
 But, I know what a number of Mr. Peña's concerns are.  And I think it would boil down to ineffective assistance of counsel suggestions, as well as some other things including the juror issue in terms of not hearing.  But, that's clearly an appellate issue at this point in time.

21
 But, I think that Mr. Peña's [sic] just wants to make sure that if he does not say "I have a number of things that I want to talk about."  And I think, probably, when he speaks with his appellate attorney, he can address the issues in regard to his counsel's performance at trial.

22
 But, I think that I want to make clear that there are some disagreements in terms of trial strategy, alibi witnesses, certain witnesses that I didn't call, things of that nature.  And he just does not want to lose that issue because it wasn't mentioned on the record.

23

1   counsel's perspective at the time." *Id.* To prevail on an ineffective assistance of counsel claim, a

2   petitioner must overcome the presumption that counsel's challenged actions might be considered

3   sound trial strategy. *Id.*

4          The second prong of the *Strickland* test requires a showing of actual prejudice related to

5   counsel's performance. To establish prejudice, a petitioner "must show that there is a reasonable

6   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

7   been different. A reasonable probability is a probability sufficient to undermine confidence in the

8   outcome." *Id.* at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a

9   different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Harrington v. Richter*,

10  562 U.S. 86, 104 (2011)).

11         While the Supreme Court established in *Strickland* the legal principles that govern claims

12  of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether

13  defense counsel's performance fell below the *Strickland* standard. *Richter*, 562 U.S. at 101.

14  Rather, when considering an ineffective assistance of counsel claim on federal habeas review,

15  "[t]he pivotal question is whether the state court's application of the *Strickland* standard was

16  unreasonable." *Id.*; *see also Burt v. Titlow*, 134 S. Ct. 10, 18 (2013). "A state court must be

17  granted a deference and latitude that are not in operation when the case involves review under the

18  *Strickland* standard itself." *Richter*, 562 U.S. at 101. Thus, federal habeas review of a state court's

19  adjudication of an ineffective assistance of counsel claim is "doubly deferential." *Pinholster*, 563

20  U.S. at 190 (quoting *Knowles v. Mirzayance*, 566 U.S. 111, 123 (2009)).

21         Petitioner argues that he had three witnesses who could testify that he was not present on

22  the alleged date of the crime, including his fiancé who testified at trial, and that there was no

23  conceivable or strategic reason not to present this defense. (Dkt. 7 at 47-48.) He asserts that had

counsel presented witnesses for the defense, the result of the proceeding would have been different. (*Id.*)  The Court of Appeals' resolution of this claim, however, was not unreasonable.  As the court noted, petitioner's fiancé admitted she and petitioner went to L.L.'s aunt's apartment but could not remember the exact date.  (Dkt. 49-2 at 169.)  Thus, even if she testified petitioner was not at the apartment on October 8, 2011, the date alleged, her testimony would not have undermined confidence in the outcome of the trial because there was no dispute that she and petitioner went to the apartment sometime in September or October 2011.  In addition, the Court of Appeals reasonably concluded that counsel's decision was sound trial strategy subject to deference under *Strickland*.  (*See* Dkt. 27, Ex. 15 at 11-12, n.2.)

With respect to petitioner's claim that counsel was ineffective during voir dire, petitioner contends that counsel should have directly engaged prospective jurors 53 and 58 to discover their prejudices.  (Dkt. 7 at 51-52.)  Petitioner claims that counsel's failure in this regard prejudiced him, but he fails to explain how.  (*See id.*)  Thus, the Court of Appeals did not unreasonably reject this claim for failure to show prejudice.

Petitioner's ineffective assistance of counsel claims should be dismissed.

4.    *Ground 6—Presentation of False Evidence and Witness Tampering*

Petitioner contends that the prosecution and defense counsel conspired to allow L.L. to testify falsely against him.  (Dkt. 3 at 22; Dkt. 7 at 32-37.)  The Court of Appeals addressed this claim as follows:

> At the first trial, L.L. was unable to identify Peña in court.  The parties expressed concern that, having seen Peña during the first trial, L.L. would be able to point him out in the second trial and give the false impression that she recalled his appearance from the date of the offense.  The prosecutor and Peña's attorney agreed that the prosecutor would instruct L.L. to answer the question in the same way she had during the first trial—by saying she was unable to identify him. Ultimately, however, the issue did not arise.  The prosecutor asked L.L. if she recognized anyone in the courtroom and L.L. responded that she knew "you [the

1

2

> prosecutor], Martha, and that lady."  No one asked L.L. to identify Peña and she
> did not do so.

3

> To succeed on a claim that the prosecutor used false evidence to convict him, Peña
> must show that "(1) the testimony (or evidence) was actually false, (2) the
> prosecution knew or should have known that the testimony was actually false, and

4

> (3) that the false testimony was material."  *United States v. Zuno-Arce*, 339 F.3d
> 886, 889 (9th Cir. 2003).  Here, because L.L. was never asked whether she could

5

> identify Peña, there was no "testimony" presented on the issue.  Moreover, Peña
> could not show that such testimony was material to the outcome because L.L.'s

6

> failure to identify him could only have been beneficial to him.  Though Peña
> argues that the jury "should have been allowed to hear the information of how L.L.

7

> knew Peña and how he was initially introduced to her," nothing precluded Peña's
> attorney from questioning L.L. on this issue.

8

9

(Dkt. 27, Ex. 15 at 6-7 (alteration in original).)

10

       "[A] criminal defendant is denied due process of law when a prosecutor either knowingly

11

presents false evidence or fails to correct the record to reflect the true facts when unsolicited false

12

evidence is introduced at trial."  *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005); *see also*

13

*United States v. Agurs*, 427 U.S. 97, 103 (1976); *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  To

14

prevail on such a claim, the defendant must establish: "(1) the testimony (or evidence) was actually

15

false, (2) the prosecution knew or should have known that the testimony was actually false, and

16

(3) that the false testimony was material."  *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir.

17

2003) (citing *Napue*, 360 U.S. at 269-71).

18

       Petitioner raises essentially the same arguments here as he did before the Court of Appeals.

19

(*See* Dkt. 7 at 32-37.)  Petitioner claims that the prosecutor deliberately used false testimony, but

20

a review of the record establishes that the Court of Appeals correctly concluded that L.L. was

21

never asked if she could identify petitioner.  (Dkt. 49-2 at 262.)  Because there was no false

22

testimony presented at trial, the Court need not address the two other factors set forth in *Zuno-*

23

*Arce*.  Ground 6 should be denied.

5.    *Ground 7—Allowing Jury to Re-watch DVD*

Petitioner complains that the trial judge abused her discretion by allowing the jury to re-watch the DVD of the child interview during their deliberations, without the benefit of the transcript and outside of his presence.  (Dkt. 3 at 23-24; Dkt. 7 at 37-41.)  Petitioner also claims that allowing access to the DVD violated his Sixth Amendment right to confrontation, including cross-examination, and his Fourteenth Amendment right to due process.  (Dkt. 7 at 37-41; *see also* Dkt. 27, Ex. 9 at 18-19.)  The Court of Appeals addressed these claims as follows:

> At trial, a DVD recording of L.L.'s forensic interview with child witness interviewer Carolyn Webster was admitted.  The jury was provided with the DVD during their deliberations, and the prosecutor supplied a computer that the jury could use to play the DVD.
>
> *****
>
> Peña first contends the admission of the DVD violated his rights under the confrontation clause.  The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."  U.S. Const. amend. VI.  But the confrontation clause is not implicated unless a witness is "unavailable" at trial.  State v. Price, 158 Wn.2d 630, 639-40, 146 P.3d 1183 (2006).  Here, both L.L. and the child interviewer testified at trial and were subject to cross-examination.  Thus, there was no confrontation clause issue.
>
> *****
>
> Peña contends that providing the DVD to the jury violated his right to be present.  A criminal defendant has a fundamental due process right to be present at all critical stages of a criminal proceeding.  State v. Irby, 170 Wn.2d 874, 880, 246 P.3d 796 (2011).  A critical stage "is one where the defendant's presence has a reasonably substantial relationship to the fullness of his or her opportunity to defend against the charge."  State v. Jasper, 158 Wn. App. 518, 539, 245 P.3d 228 (2010).  But a violation of the due process right to be present is subject to harmless error analysis.  Irby, 170 Wn.2d at 885.  A defendant must first raise at least the possibility of prejudice; then the State then bears the burden of showing that the error was harmless beyond a reasonable doubt.  State v. Bourgeois, 133 Wn.2d 389, 407, 945 P.2d 1120 (1997).
>
> Here, the record does not show whether the jury actually replayed the DVD during their deliberations.  But even if they had, any error in replaying the DVD outside

of Peña's presence was harmless. "The proceeding was recorded by a court reporter, and nothing was replayed to the jurors that they had not heard earlier in the trial." State v. Rice, 110 Wn.2d 577, 614, 757 P.2d 889 (1988). And Peña does not address or acknowledge his burden to show prejudice.

\*\*\*\*\*

Finally, Peña challenges the decision not to provide the jury with the unadmitted transcript used as a listening aid when the DVD was admitted and played at trial. But the parties stipulated that the transcript would not be admitted as an exhibit. Because Peña failed to offer the transcript or object to its exclusion below, he has waived further review of this claim. See ER 103(a)(1); State v. Powell, 126 Wn.2d 244, 256, 893 P.2d 615 (1995).

(Dkt. 27, Ex. 15 at 7-10.)

Petitioner fails to show that the Court of Appeals' decision is contrary to or an unreasonable application of clearly established law. First, petitioner's claim that the trial judge abused her discretion is not based on clearly established law because the Supreme Court has never held that allowing a jury to view admitted evidence during deliberations violates the Constitution. *See Brewer*, 378 F.3d at 955 ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law."). Thus, regardless of how lower federal courts have analyzed similar claims, this claim cannot be the basis for federal habeas relief.

Second, the Court of Appeals reasonably concluded that petitioner could not establish a confrontation clause violation because L.L. and the child interviewer testified at trial and were subject to cross-examination. *See Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986) ("[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination . . . .").

Third, the Court of Appeals reasonably concluded that allowing the jury to re-watch the

DVD outside of petitioner's presence did not violate his constitutional rights. The Sixth Amendment and the Fourteenth Amendment due process clause protect a criminal defendant's fundamental right to be present at all critical stages of a trial. *See Rushen v. Spain*, 464 U.S. 114, 117 (1983) (per curiam); *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam). A violation of this right is subject to harmless error analysis. *Rushen*, 464 U.S. at 117-18. Because nothing was replayed to the jurors that had not already been played in open court, the Court of Appeals reasonably concluded that any error would be harmless.

Finally, petitioner's complaint regarding the unadmitted transcript of the DVD video does not appear to be based on clearly established law, and if it was, he makes no showing that the Court of Appeals' decision was unreasonable. Ground 7 should be denied.

6.    *Ground 8—Cumulative Error*

Petitioner alleges that the cumulative errors committed at trial entitle him to habeas relief. (Dkt. 3 at 25-26; Dkt. 7 at 53-54.) "[T]he combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Chambers v. Mississippi*, 410 U.S. at 298, 302-03 (1973) (combined effect of individual errors "denied [Chambers] a trial in accord with traditional and fundamental standards of due process" and "deprived Chambers of a fair trial"). "The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." *Id*. (citing *Chambers*, 410 U.S. at 290 n.3). In this case, petitioner has established no constitutional error arising out of his claims. Accordingly, there is nothing to accumulate to the level of a constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).

/ / /

C.      Evidentiary hearing

Because petitioner's claims can be resolved by reference to the state court record, an evidentiary hearing is not necessary.  *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("[A]n evidentiary hearing is not required on issues that can be resolved by reference to the state court record.").

## V.      CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge.  A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Under this standard, the Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of his claims.

## VI.      CONCLUSION

The Court recommends petitioner's habeas petition be DENIED without an evidentiary hearing and this action be DISMISSED with prejudice.  The Court further recommends that a certificate of appealability be DENIED as to all grounds for relief raised in this action.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect

REPORT AND RECOMMENDATION - 28

your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 11, 2019**.

Dated this <u>19th</u> day of September, 2019.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 29